IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CORBIT AHN, ) | CIVIL NO. 13-00013 JMS-BMK |
| ) | |
| Plaintiff, ) | ORDER GRANTING MOTION TO |
| ) | DISMISS WITHOUT PREJUDICE AS |
| vs. ) | TO COUNT ONE, AND REMANDING |
| ) | ACTION TO THE FIRST CIRCUIT |
| STATE OF HAWAII DEPARTMENT ) | COURT OF THE STATE OF HAWAII |
| OF PUBLIC SAFETY; STATE OF ) | |
| HAWAII; DOE DEFENDANTS 1-50, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE AS TO COUNT ONE, AND REMANDING ACTION TO THE FIRST CIRCUIT COURT OF THE STATE OF HAWAII

## I. INTRODUCTION

In this action brought under 42 U.S.C. § 1983, Plaintiff Corbit Ahn

("Plaintiff" or "Ahn") alleges, among other claims, violations of his civil rights

while incarcerated at the Oahu Community Correctional Center ("OCCC").

Defendants State of Hawaii Department of Public Safety ("DPS"), and the State of

Hawaii (collectively "Moving Defendants" or "the State") move to dismiss because

Plaintiff has failed to exhaust administrative remedies as required by 42 U.S.C.

§ 1997e(a).  Based on the following, the Motion is GRANTED as to the federal

claim.  Count One of the Complaint dismissed without prejudice, and the

remainder of the action is REMANDED to the First Circuit Court of the State of Hawaii.

## II. <u>BACKGROUND</u>

### A.  Factual Background

The court assumes the Complaint's factual allegations are true for purposes of this Motion.  *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).  Thus, for purposes of this Motion, the relevant facts are as follows:

Plaintiff was a pre-trial detainee at OCCC from about September 2009, through and including June 19, 2010.[1]  Doc. No. 1-1, Compl. ¶ 8.  On June 19, 2010, Plaintiff was in protective custody in the Special Holding Unit ("SHU") at OCCC.  *Id.* ¶ 9.  Three presently-unidentified Adult Correctional Officers ("ACOs") placed Plaintiff in a cell on the third floor of the SHU.  *Id.* ¶ 10.  The SHU's third floor, containing twelve cells, was otherwise empty, and the ACOs placed Plaintiff in the "most remote" cell on that floor.  *Id.* ¶¶ 11-13.  The ACOs left the door of Plaintiff's cell open, played loud music (to "muffle any screams for

---

[1]  Plaintiff remained in "pre-trial" custody through April 2012, as the court takes judicial notice of Plaintiff's conviction of murder and sexual assault on April 9, 2012.  *See State v. Ahn*, 1PC09-1-001428, Dkt. No. 175, available at http://hoohiki2.courts.state.hi.us/jud/ Hoohiki (last visited April 15, 2013).

help"), ordered ten to twelve other inmates into Plaintiff's cell, and then ordered them to attack and beat Plaintiff.  *Id.* ¶ 14.

The inmates attacked Plaintiff until he was unconscious.  *Id.* ¶¶ 15-16.  Following the beating, "Plaintiff was left for dead."  *Id*. ¶ 16.  Several hours later, Plaintiff was removed from the third floor of the SHU and was taken to the emergency room at Queen's Medical Center.  *Id.* ¶ 17.  Plaintiff "immediately reported the attack to OCCC officials, DPS and the Honolulu Police Department."  *Id*. ¶ 19.  As a result of the attack, Plaintiff suffered, and continues to suffer, injuries and damages.  *Id.* ¶ 20.

**B.    Procedural Background**

On June 18, 2012, Plaintiff filed this action in the Circuit Court of the First Circuit, State of Hawaii.  Doc. No. 1-1.  The Complaint asserts a single claim under 42 U.S.C. § 1983 against the unidentified ACOs for violations under color of state law of Plaintiff's Fifth, Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution.  *Id.*, Compl. ¶ 28.  It also asserts causes of action under state law for negligence, negligent training and/or supervision, assault, battery, and infliction of emotional distress against the ACOs, the DPS, and the State of Hawaii.  *Id.* ¶¶ 30-49.  On January 10, 2013, the action was

3

removed to this court pursuant to 28 U.S.C. § 1441.  Doc. No. 1, Notice of Removal.

On February 1, 2013, the Moving Defendants[2] filed this Motion to Dismiss, contending that Plaintiff has failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).  Doc. No. 5-1.  Plaintiff filed an Opposition on March 26, 2013.  Doc. No. 12.  The Moving Defendants did not file a Reply.  The Motion was heard on April 15, 2013.

## III.  DISCUSSION

### A.    Count One -- 42 U.S.C. § 1983

#### 1.    *Legal Standards*

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Under this section, exhaustion is

---

[2]  Although only the DPS and State of Hawaii filed the Motion, the Complaint alleges that the conduct of the three unidentified ACOs (named as Doe Defendants in Count One) constitutes "deliberate indifference" and "was done in their capacities as adult corrections officers for the State of Hawaii Department of Public Safety."  Doc. No. 1-1, Compl. ¶ 28.  The Moving Defendants may raise the failure to exhaust as to these State employees, alleged to be working for the DPS, and the relief sought in the Motion applies equally to them (even if they have not been named or served).  *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) (upholding dismissal in favor of a party which had not appeared, on the basis of facts presented by other defendants which had moved to dismiss) (citations omitted).

mandatory, "regardless of the relief offered through administrative procedures."

*Booth v. Churner*, 532 U.S. 731, 741 (2001) (footnote and citation omitted).  And

the "exhaustion requirement applies to all inmate suits about prison life, whether

they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

*Woodford v. Ngo*, 548 U.S. 81 (2006) explains that:

> Because exhaustion requirements are designed to deal
> with parties who do not want to exhaust, administrative
> law creates an incentive for these parties to do what they
> would otherwise prefer not to do, namely, to give the
> agency a fair and full opportunity to adjudicate their
> claims.  Administrative law does this by requiring proper
> exhaustion of administrative remedies, which means
> using all steps that the agency holds out, and doing so
> *properly* (so that the agency addresses the issues on the
> merits).

*Id.* at 90 (citation and quotation marks omitted).

Nonexhaustion under § 1997e(a) is an affirmative defense that a

defendant may raise in a nonenumerated Rule 12(b) motion.  *Jones v. Bock*, 549

U.S. 199, 216 (2007) ("[I]nmates are not required to specially plead or demonstrate

exhaustion in their complaints."); *Wyatt v. Terhune*, 315 F.3d 1108, 1117-19 (9th

Cir. 2003).  In deciding a motion to dismiss for failure to exhaust administrative

remedies under § 1997e(a), the court may look beyond the pleadings and decide

disputed issues of fact.  *Wyatt*, 315 F.3d at 1119-20.  When such a motion to

5

dismiss requires the court to look beyond the pleadings and consider evidence, it does so under "a procedure closely analogous to summary judgment." *Id.* at 1120 n.14.  If the court concludes that the prisoner has not exhausted the prison's administrative procedures, the proper remedy is dismissal without prejudice.  *Id.* at 1120.

### 2.    *Application of Standards*

Given § 1997e(a), Moving Defendants seek dismissal, and provide evidence to meet their burden to demonstrate that Plaintiff failed to exhaust administrative remedies prior to filing this suit.[3]  In particular, the Declaration of Tommy Liu, an Inmate Grievance Specialist with the DPS, establishes that Plaintiff has filed numerous grievances during his incarceration in 2009 and 2010, and none of those grievances concern the June 19, 2010 beating on the third floor of the SHU.  *See* Doc. No. 5-2, Liu Decl. ¶¶ 5-6; Doc. No. 5-4, Defs.' Ex. B at 1-10 (copies of Plaintiff's grievances).

In response, Plaintiff admits that he did not exhaust administrative remedies for the incident at issue.  Instead, he argues that he did not exhaust remedies because they were not "available."  *See* 42 U.S.C. § 1997e(a) ("No action

---

[3] Excessive force constitutes a "prison condition" for purposes of § 1997e(a).  *See, e.g.*, *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *Harvey v. Jordan*, 605 F.3d 681, 684 (9th Cir. 2010).

shall be brought with respect to prison conditions . . . until such administrative remedies *as are available* are exhausted.") (emphasis added); *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (recognizing an exception from § 1997e(a)'s exhaustion requirement for remedies that are "effectively unavailable.").  He argues -- without citing any evidence -- that, upon his return to OCCC from the hospital, he was threatened by ACOs "and other inmates to keep his mouth shut about the attack or he would be killed."  Doc. No. 12, Opp'n at 4.[4]  In this regard, he relies on non-Ninth Circuit caselaw (cited with approval in *Nunez*), for the proposition that, in some specific situations, threats of retaliation can render prison administrative remedies unavailable such that exhaustion is excused.  *See, e.g.*, *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) ("A prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy 'unavailable'[.]"); *Kaba v. Stepp*, 458 F.3d 678, 684-86 (7th Cir. 2006) (remanding to the district court to determine whether prison officials' threats had effectively prevented the prisoner from exhausting his administrative remedies).

---

[4]  In apparent contradiction, however, he also asserts -- consistent with his Complaint -- that he immediately reported the attack to OCCC officials, the DPS, and the Honolulu Police Department.  Doc. No. 12, Opp'n at 4; Doc. No. 1-1, Compl. ¶ 19.

Initially, Plaintiff -- acting through counsel -- has failed to rebut Moving Defendants' affirmative showing of nonexhaustion with any *evidence* to meet his corresponding burden at this stage.  He has nothing -- no declaration, no documents, no proof -- to support his argument that he was threatened with retaliation if he pursued a grievance.  Moreover, his argument is vague and conclusory.[5]  He argues that "administrative remedies were not available to Plaintiff because his life was threatened . . . threats and retaliation made it impossible for Plaintiff to file grievances regarding the June 19, 2010, attack."  Doc. No. 12, Opp'n at 8.  He contends, "Plaintiff was threatened by ACO's and

---

[5] Caselaw that Plaintiff relies upon requires specific threats of retaliation, measured objectively, to excuse exhaustion.  In *Turner*, for example, the Eleventh Circuit set forth the following test:

> We conclude that a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met:  (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

541 F.3d at 1085 (citing *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) ("The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." (citation omitted)).  *Turner* explained that "[t]he particulars of this standard for determining the availability of administrative remedies where a threat is alleged can be honed against the facts of future cases, with particular attention paid to the special circumstances and security needs of prisons."  *Id.*  No such circumstances are present on the record with Ahn's Complaint.

other inmates to keep his mouth shut about the brutal attack. . . .  It is unrealistic to

expect Plaintiff to file a grievance against the very people who are threatening

violence and retaliation against him." *Id.* at 9.  His burden, however, is to produce

*evidence* -- and not simply argument -- to establish at least a question as to whether

remedies were unavailable.  *See, e.g.*, *Wyatt*, 315 F.3d at 1120.

Moreover, Plaintiff's argument is belied by the record.  Moving

Defendants have produced two grievances that Plaintiff filed against the OCCC

Warden Francis Sequeira and Chief of Security John Manumaleuna *after* the

alleged June 19, 2010 incident.  *See* Doc. No. 5-4, Defs.' Ex. B at 1 (grievance

dated July 22, 2010); *id.* at 2 (grievance dated July 3, 2010).  Both grievances were

responded to, and the response was acknowledged by Plaintiff.  *Id.*  Plaintiff

clearly knew how to, and did, file grievances *after* the incident.  And there is no

indication, for example, that Plaintiff attempted to file a grievance only to have a

prison official refuse to file it and threaten retaliation for doing so.  *Compare, e.g.*,

*Turner*, 541 F.3d at 1081 (excusing exhaustion where warden tore up inmate's

grievance and threatened him if he filed another).

What's more, Plaintiff also "immediately reported the incident to

OCCC officials, DPS and the Honolulu Police Department," Doc. No. 1-1, Compl.

¶ 19, and he contends that, as a result, the "matter was investigated by [DPS] and

9

some of the ACO's involved in the June 19, 2010, attack were suspended." Doc. No. 12, Opp'n at 8-9. Such actions by Plaintiff are completely inconsistent with his supposed fear of retaliation for otherwise seeking to comply with the prison's administrative process.[6] *See, e.g., Stacy v. Clark*, 2010 WL 4791793, at *5 (D. Or. Nov. 18, 2010) ("Threats and retaliation stopped the inmates in *Turner* and *Kaba* from completing, or even starting, the grievance process. Here, threats and retaliation did not stop [the inmate] from filing grievances against the people threatening him. I am not persuaded that Stacy failed to file the necessary appeals out of fear."). Accordingly, the court DISMISSES the action without prejudice. *See Wyatt*, 315 F.3d at 1120 ("If the court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.").

Finally, Plaintiff asks the court for leave to amend if the court does not excuse the failure to exhaust administrative remedies. Doc. No. 12, Opp'n at 9.

---

[6] And, accepting Plaintiff's allegation that he immediately reported the incident to DPS authorities, such actions cannot substitute for the administrative exhaustion process. *See Woodford v. Ngo*, 548 U.S. 81, 83 (2006) (reasoning that § 1997e's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal"). Rather, proper exhaustion is required. *Id.* at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91 (footnote omitted). Compliance with prison grievance procedures is required to "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

But amendment would be futile.  The failure here is not one of pleading -- indeed, administrative exhaustion need not be pleaded at all.  *See Wyatt*, 315 F.3d at 1119 ("[N]onexhaustion under § 1997e(a) . . . does not impose a pleading requirement.").  Instead, the failure is one of proof.  The record establishes that Plaintiff's administrative remedies were available.[7]  Plaintiff failed to meet his burden to establish that they were made unavailable by specific actions of Defendants.  It would make no difference if the Complaint were amended.  Thus, the request for leave to amend is DENIED.

## B.   The Remaining Supplemental State Law Claims

The exhaustion requirement under § 1997e(a), however, only applies to federal claims, and a failure to exhaust does not require dismissal of the entire action.  *See generally Jones*, 549 U.S. at 220-23.  The court thus dismisses only Count One of the Complaint.  Given the court's dismissal of the federal claim, the only claims remaining are state law claims over which the court has only supplemental jurisdiction.  (There is no basis in the Complaint for diversity jurisdiction.)  Under 28 U.S.C. § 1367(c)(3), "district courts may decline to

---

[7]  At the hearing, Plaintiff's counsel attempted to make additional argument as to the circumstances of the retaliation.  But the evidentiary record, not the argument of counsel, is controlling.  Again, the record -- including Plaintiff's existing grievances and assuming as true that Plaintiff immediately reported the beating to OCCC officials and the Honolulu Police Department -- establishes that the administrative grievance process was available as to the incident at issue.

exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"   "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"   *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

Because state courts have the primary responsibility for developing and applying state law, "the values of judicial economy, convenience, fairness and comity" do not favor retaining jurisdiction in this case.  *See Acri*, 114 F.3d at 1001 (providing that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point towards declining to exercise jurisdiction over the remaining state-law claims" (quoting *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7)); *Gustafson v. Fukino*, 2010 WL 2507556, at *9-10 (D. Haw. June 18, 2010) (declining supplemental jurisdiction over state law claims after dismissal of civil rights claim under 42 U.S.C. § 1983).

Therefore, the court declines to continue exercising supplemental jurisdiction over the state law claims alleged in Plaintiff's Complaint.  The claims are matters for state courts.  Moreover, judicial economy does not favor retaining

jurisdiction.  The action in this court has not proceeded past the initial pleading stages -- Defendants have yet to file an Answer and the court has not resolved any substantive matters.  *See Otto v. Heckler*, 802 F.2d 337, 338 (9th Cir. 1986) ("[T]he district court, of course, has the discretion to determine whether its investment of judicial energy justifies retention of jurisdiction or if it should more properly dismiss the claims without prejudice."); *Castaneda v. Saxon Mortg. Servs.*, 2010 WL 2303246, at *1 (E.D. Cal. June 7, 2010) (declining to exercise supplemental jurisdiction and reasoning, in part, that "while it has been over a year since plaintiffs filed their original Complaint in federal court, the case has yet to progress beyond the motion to dismiss stage"); *Pica v. Wachovia Mortg.*, 2010 WL 2555634, at *1 (E.D. Cal. June 21, 2010) ("Since this lawsuit has not proceeded past the pleading stage, continued exercise of supplemental jurisdiction over the state law claims serves no efficiency interest.") (quotation marks and citation omitted).

             In short, judicial economy, convenience, fairness, and comity weigh in favor of declining jurisdiction over Plaintiff's state law claims.

///

///

///

## IV.  <u>CONCLUSION</u>

The Motion to Dismiss is GRANTED.  Count One of the Complaint, asserting a claim under 42 U.S.C. § 1983, is DISMISSED without prejudice.  After such dismissal of the federal claim, the court DECLINES supplemental jurisdiction over the state law claims and REMANDS the action to the First Circuit Court of the State of Hawaii.

IT IS SO ORDERED.

DATED, Honolulu, Hawaii:  April 15, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Ahn v. State of Haw., Dep't of Pub. Safety, et al.*, Civ. No. 13-00013 JMS-BMK, Granting Motion to Dismiss Without Prejudice as to Count One, and Remanding Action to the First Circuit Court of the State of Hawaii